# EXHIBIT A

Tayjes Shah (Identification No.: 307899)
**THE MILLER FIRM, LLC**
108 Railroad Avenue
Orange, Virginia 22960
Tel: (540) 672–4224
Fax: (540) 672–3055
E–Mail: tshah@millerfirmllc.com



*Filed and Attested by the
Office of Judicial Records
20 JAN 2022 01:31 pm
S. RICE*

Aimee H. Wagstaff
**WAGSTAFF LAW FIRM**
Colo Bar 36819
940 N. Lincoln Street
Denver, CO 80203
Tel: (303) 376-6360
Fax: (888) 875-2889
Email: Awagstaff@wagstafflawfirm.com

**ATTORNEYS FOR PLAINTIFFS**

---

**COURT OF COMMON PLEAS
PHILADELPHIA COUNTY**

BARBARA ALLEN-HARING

DAVID STEELE

JOSEPH WOCHNER

BARBARA BURNS, and

LAURIANO BARAJAS

   Plaintiffs,      January Term, 2022

v.           Case No._____

            DEMAND FOR A JURY TRIAL

SYNGENTA CROP PROTECTION, LLC
Serve R/A
CT Corporation System
Dauphin, PA

CHEVRON U.S.A. INC
Serve R/A
CORPORATION SERVICE COMPANY

1

Case ID: 220101644

Dauphin, PA


FMC CORPORATION
Serve R/A
C T CORPORATION SYSTEM
1635 MARKET STREET
PHILADELPHIA, PA 19103-0


               Defendants.

_____

## NOTICE TO PLEAD

**NOTICE**   You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

**AVISO**   Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siquientes, usted tiene veinte (20) dias de plazo al partir de la fecha de lan demanda y la notificacion. Hace falta asentar una comparesencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIOI, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

**PHILADELPHIA COUNTY BAR ASSOCIATION**
LAWYER REFERRAL AND INFORMATION SERVICE
ONE READING CENTER
PHILADELPHIA, PENNSYLVANIA  19107 TELEPHONE:
(215) 238-6333
TTY (215) 451-6197

**ASOCIACION DE LICENCIADOS DE FILADELFIA**
SERVICIO DE REFERENCIA E INFORMACION LEGAL
ONE READING CENTER
PHILADELPHIA, PENNSYLVANIA  19107
TELEPHONE:   (215) 238-6333
TTY (215) 451-6197

Case ID: 220101644

Tayjes Shah (Identification No.: 307899)
**THE MILLER FIRM, LLC**
108 Railroad Avenue
Orange, Virginia 22960
Tel: (540) 672–4224
Fax: (540) 672–3055
E–Mail: tshah@millerfirmllc.com

Aimee H. Wagstaff
**WAGSTAFF LAW FIRM**
Colo Bar 36819
940 N. Lincoln Street
Denver, CO 80203
Tel: (303) 376-6360
Fax: (888) 875-2889
Email: Awagstaff@wagstafflawfirm.com

**ATTORNEYS FOR PLAINTIFFS**

---

**COURT OF COMMON PLEAS**
**PHILADELPHIA COUNTY**

BARBARA ALLEN-HARING

DAVID STEELE

JOSEPH WOCHNER

BARBARA BURNS, and

LAURIANO BARAJAS

       Plaintiffs,          January Term, 2022

v.                    Case No._____

                         DEMAND FOR A JURY TRIAL

SYNGENTA CROP PROTECTION, LLC
Serve R/A
CT Corporation System
Dauphin, PA

CHEVRON U.S.A. INC
Serve R/A
CORPORATION SERVICE COMPANY
Dauphin, PA

3

Case ID: 220101644

FMC CORPORATION
Serve R/A
C T CORPORATION SYSTEM
1635 MARKET STREET
PHILADELPHIA, PA 19103-0

                    Defendants.
_____

**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs BARBARA ALLEN, JAMES LOENBERGER, TERRELL STURGELL, BARBARA BURNS, and LURIANO BARAJAS (collectively, "Plaintiffs") by undersigned counsel, hereby submits this Complaint against the above-captioned Defendants for equitable relief, monetary restitution, and/or compensatory and punitive damages. Plaintiffs make the following allegations based upon personal knowledge, and upon information and belief, as well as their attorneys' investigative efforts, regarding Paraquat and its connection to Parkinson's disease.

**STATEMENT OF THE CASE**

1.      This is a products liability action against the above-named Defendants (hereinafter, collectively referred to as "Defendants") because Plaintiffs suffered from the severe effects of Parkinson's disease caused by exposure to products containing Paraquat ("PRODUCTS" or "Paraquat") which were sold, manufactured, distributed, and/or marketed by Defendants.

2.      Plaintiffs, through this action, seeks recovery for damages as a result of their developing Parkinson's disease, which was directly and proximately caused by such wrongful conduct by Defendants, the unreasonably dangerous and defective nature of Paraquat, and the attendant effects of developing Parkinson's disease.

4

Case ID: 220101644

3.      At all relevant times, all Defendants were engaged in the research, development, manufacture, design, testing, sale and marketing of PRODUCTS, and introduced such products into interstate commerce with knowledge and intent that such products be sold in all States of the United States.

4.      Defendants concealed and continue to conceal their knowledge of the PRODUCTS' unreasonably dangerous risks from Plaintiffs, other consumers, and the medical community. Specifically, Defendants failed to adequately inform Plaintiffs, consumers, and the medical community about the risks of Parkinson's disease associated with the use of the PRODUCTS, which were known to and withheld by Defendants.

## JURISDICTION AND VENUE

5.      At all times relevant hereto, Defendants were in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging and/or advertising Paraquat products.

6.      At all times relevant hereto, Defendants had offices in Pennsylvania and/or regularly solicited and transacted business in the Commonwealth of Pennsylvania and Philadelphia County. In addition, the Defendants reasonably expected that their Products would be used or consumed in Pennsylvania and Philadelphia County.

7.      This is an action for damages which exceeds fifty thousand dollars ($50,000).

8.      Plaintiffs have timely filed this lawsuit within two years of discovering his cause of action as defined and require by Pennsylvania 42 Pa. Cons. State. § 5524(2).

9.      Venue of this case is proper in Philadelphia County because Defendants regularly conduct business in Philadelphia County.

10.     Defendant FMC Corporation is headquartered in Philadelphia and maintains a registered agent in Philadelphia

5

Case ID: 220101644

11.     Defendant CHEVRON U.S.A. INC regularly conducts substantial business in Philadelphia. Defendant Syngenta Crop Protection, LLC ("SCPLLC") regularly conducts substantial business in Philadelphia.

12.     This is a complex product liability tort case. This Court is renowned for its ability and resources to handle complex tort litigation dockets in an organized and efficient fashion.  No other county in Pennsylvania is better suited to handle such claims.

13.     Pursuant to Pa. R.C.P. 1006(c) in actions alleging joint and several liability against two or more defendants, venue is proper if it is proper as to any of the defendants. In this case, Plaintiffs allege joint and several liability on more than two defendants. Philadelphia County is the proper venue for a number of these defendants. Therefore, venue is proper on all defendants.

14.     General and/or specific personal jurisdiction is proper as to Defendants for the reasons stated below.

15.     Jurisdiction is proper as to Chevron U.S.A. in Pennsylvania because it 1) is "at home" in Pennsylvania, 2) it maintains significant business in Pennsylvania, and 3) it consented to jurisdiction in Pennsylvania by registering to do business in Pennsylvania. *See, e.g., Bors v. Johnson & Johnson, No.* CV 16-2866, 2016 WL 517286 at *1 (E.D. Pa. Sept. 20, 2016).

16.     Jurisdiction is proper as to the Syngenta Crop Protection, LLC because 1) Syngenta Crop Protection, LLC regularly employs employees in Pennsylvania and maintains significant contacts with Pennsylvania, *see, e.g., Bristol-Myers Squibb Co. v. Superior Court*, 377 P.3d 874

Case ID: 220101644

(Cal. 2016); 2) Syngenta Crop Protection, LLC. consented to jurisdiction in Pennsylvania by registering to do business in Pennsylvania, *see, e.g., Bors v. Johnson & Johnson*, No. CV 16- 2866, 2016 WL 517286 at *1 (E.D. Pa. Sept. 20, 2016); 3) Syngenta Crop Protection, LLC maintains significant contacts in Pennsylvania, including but not limited to the sale of its dangerous PRODUCTS to consumers in Pennsylvania; and 4) Syngenta Crop Protection, LLC purposefully sought to suppress warnings on the risk that Paraquat posed to those using the PRODUCTS for Parkinson's disease, to omit any warnings on the PRODUCTS, and to prevent regulation of the PRODUCTS so as not to negatively affect sales and maximize Defendants' profits in the Commonwealth of Pennsylvania. *Skipworth by Williams v. Lead Industries Ass'n, Inc.*, 690 A.2d 169, 174 (Pa. 1997).

17.     Jurisdiction is proper as to FMC Corporation Inc. in Pennsylvania because it 1) is "at home" in Pennsylvania, 2) it maintains significant business in Pennsylvania, and 3) it consented to jurisdiction in Pennsylvania by registering to do business in Pennsylvania. *See, e.g., Bors v. Johnson & Johnson*, No. CV 16-2866, 2016 WL 517286 at *1 (E.D. Pa. Sept. 20, 2016).

## PLAINTIFFS' EXPOSURE TO PARAQUAT

### *Barbara Allen-Haring*

18.     Plaintiff Barbara Allen-Haring is a resident of Pennsylvania. During the 1980s, she lived and worked on a family farm in Pennsylvania where she would mix and spray Paraquat from a large tank. She would also hand-spray Paraquat around the farm and garden.

19.     Ms. Allen-Haring was exposed to Paraquat (1) when it was mixed, loaded, applied, and/or cleaned; (2) as a result of spray drift (the movement of herbicide spray droplets from the target area to an area where herbicide application was not intended, typically by wind); and/or (3) as a result of contact with sprayed plants and equipment covered in Paraquat. Paraquat came into contact with Ms. Allen-Haring's skin and clothes. Ms. Allen-Haring inhaled Paraquat.

Case ID: 220101644

20.    At all relevant times, it was reasonably foreseeable that when Paraquat was used in the intended or a reasonably foreseeable manner, users of Paraquat and persons nearby, such as Ms. Allen-Haring, would be exposed to it.

21.    At all relevant times, it was reasonably foreseeable that Paraquat could enter Ms. Allen-Haring's body: (1) through absorption or penetration of the skin, mucous membranes, and other epithelial tissues (including tissues of the mouth, nose and nasal passages, trachea, and conducting airways, particularly where cuts, abrasions, rashes, sores, or other tissue damage were present); (2) through the olfactory bulb; (3) through respiration into the lungs; and (4) through ingestion into the digestive tract of small droplets swallowed after entering the mouth, nose, or conducting airways.

### David Steele

22.    Plaintiff David Steele is a resident of Washington. During the 1980s through approximately 2007, he lived and worked on farmland in Washington growing hay and porridge. Mr. Steele mixed Paraquat and sprayed it using a backpack sprayer and a 30-gallon trailer tank.

23.    Mr. Steele was exposed to Paraquat (1) when it was mixed, loaded, applied, and/or cleaned; (2) as a result of spray drift (the movement of herbicide spray droplets from the target area to an area where herbicide application was not intended, typically by wind); and/or (3) as a result of contact with sprayed plants and equipment covered in Paraquat. Paraquat came into contact with Mr. Steele's skin and clothes. Mr. Steele inhaled Paraquat.

24.    At all relevant times, it was reasonably foreseeable that Paraquat could enter Mr. Steele's body: (1) through absorption or penetration of the skin, mucous membranes, and other epithelial tissues (including tissues of the mouth, nose and nasal passages, trachea, and conducting airways, particularly where cuts, abrasions, rashes, sores, or other tissue damage were present); (2) through the olfactory bulb; (3) through respiration into the lungs; and (4) through ingestion into the

Case ID: 220101644

digestive tract of small droplets swallowed after entering the mouth, nose, or conducting airways.

### *Joseph Wochner*

25.      Plaintiff Joseph Wochner is a resident of Illinois. During the 1970s, he lived and worked on farmland owned by his family in Illinois. Mr. Wochner would mark paths in the fields for crop duster aircraft to follow when spraying Paraquat and would be on the ground when the aircraft sprayed Paraquat on the fields. From the 1970s to approximately 2010, Mr. Wochner also cleaned and repaired farm equipment that had been used to mix and/or spray Paraquat.

26.      Mr. Wochner was exposed to Paraquat (1) when it was mixed, loaded, applied, and/or cleaned; (2) as a result of spray drift (the movement of herbicide spray droplets from the target area to an area where herbicide application was not intended, typically by wind); and/or (3) as a result of contact with sprayed plants and equipment covered in Paraquat. Paraquat came into contact with Mr. Wochner's skin and clothes. Mr. Wochner inhaled Paraquat.

27.      At all relevant times, it was reasonably foreseeable that Paraquat could enter Mr. Wochner's body: (1) through absorption or penetration of the skin, mucous membranes, and other epithelial tissues (including tissues of the mouth, nose and nasal passages, trachea, and conducting airways, particularly where cuts, abrasions, rashes, sores, or other tissue damage were present); (2) through the olfactory bulb; (3) through respiration into the lungs; and (4) through ingestion into the digestive tract of small droplets swallowed after entering the mouth, nose, or conducting airways.

### *Barbara Burns*

28.      Plaintiff Barbara Burns is a resident of Florida. From approximately 1983 to 1993, she worked on agricultural land in Florida, including farmland that grew corn, soy, hay, and tobacco. Beginning in approximately 1983 and continuing through approximately 1993, Ms. Burns used Paraquat by spraying it from tractors and hand-sprayers. Ms. Burns would fill hand sprayers with

9

Case ID: 220101644

Paraquat from a large contained connected to a tractor.

29.    Ms. Burns was exposed to Paraquat (1) when it was mixed, loaded, applied, and/or cleaned; (2) as a result of spray drift (the movement of herbicide spray droplets from the target area to an area where herbicide application was not intended, typically by wind); and/or (3) as a result of contact with sprayed plants and equipment covered in Paraquat. Paraquat came into contact with Ms. Burns's skin and clothes. Ms. Burns inhaled Paraquat.

30.    At all relevant times, it was reasonably foreseeable that when Paraquat was used in the intended or a reasonably foreseeable manner, users of Paraquat and persons nearby, such as Ms. Burns, would be exposed to it.

31.    At all relevant times, it was reasonably foreseeable that Paraquat could enter Ms. Burns's body: (1) through absorption or penetration of the skin, mucous membranes, and other epithelial tissues (including tissues of the mouth, nose and nasal passages, trachea, and conducting airways, particularly where cuts, abrasions, rashes, sores, or other tissue damage were present); (2) through the olfactory bulb; (3) through respiration into the lungs; and (4) through ingestion into the digestive tract of small droplets swallowed after entering the mouth, nose, or conducting airways.

### *Lauriano Barajas*

32.    Plaintiff Lauriano Barajas is a resident of Washington. From approximately 1983 to 1989, he worked on agricultural land in Washington. Beginning in approximately 1983 and continuing through approximately 1989, Mr. Barajas used Paraquat by mixing it and spraying it from a backpack sprayer and a tractor sprayer.

33.    Mr. Barajas was exposed to Paraquat (1) when it was mixed, loaded, applied, and/or cleaned; (2) as a result of spray drift (the movement of herbicide spray droplets from the target area to an area where herbicide application was not intended, typically by wind); and/or (3) as a result of contact with sprayed plants and equipment covered in Paraquat. Paraquat came into

Case ID: 220101644

contact with Mr. Barajas's skin and clothes. Mr. Barajas inhaled Paraquat.

34.    At all relevant times, it was reasonably foreseeable that when Paraquat was used in the intended or a reasonably foreseeable manner, users of Paraquat and persons nearby, such as Mr. Barajas, would be exposed to it.

35.    At all relevant times, it was reasonably foreseeable that Paraquat could enter Mr. Barajas's body: (1) through absorption or penetration of the skin, mucous membranes, and other epithelial tissues (including tissues of the mouth, nose and nasal passages, trachea, and conducting airways, particularly where cuts, abrasions, rashes, sores, or other tissue damage were present); (2) through the olfactory bulb; (3) through respiration into the lungs; and (4) through ingestion into the digestive tract of small droplets swallowed after entering the mouth, nose, or conducting airways.

## PARAQUAT CAUSES PARKINSON'S DISEASE

36.    At all relevant times, it was reasonably foreseeable that Paraquat that entered a human body could ultimately enter the brain.

37.    At all relevant times, it was reasonably foreseeable that Paraquat that entered a human body could induce the misfolding of the alpha synuclein protein.

38.    Parkinson's disease is a progressive neurodegenerative disorder of the brain that affects primarily the motor system-the part of the central nervous system that controls movement.

39.    The characteristic symptoms of Parkinson's disease are its "primary" motor symptoms: resting tremor (shaking movement when the muscles are relaxed), bradykinesia (slowness in voluntary movement and reflexes), rigidity (stiffness and resistance to passive movement), and postural instability (impaired balance).

40.    Parkinson's disease's primary motor symptoms often result in "secondary" motor symptoms such as freezing of gait; shrinking handwriting; mask-like expression; slurred, monotonous, quiet voice; stooped posture; muscle spasms; impaired coordination; difficulty

Case ID: 220101644

swallowing; and excess saliva and drooling caused by reduced swallowing movements.

41.     Non-motor symptoms-such as loss of or altered sense of smell; constipation; low blood pressure on rising to stand; sleep disturbances; and depression-are present in most cases of Parkinson's disease, often for years before any of the primary motor symptoms appear.

42.     There is currently no cure for Parkinson's disease; no treatment will stop or reverse its progression; and the treatments most commonly prescribed for its motor symptoms tend to become progressively less effective, and to increasingly cause unwelcome side effects, the longer they are used.

43.     One of the primary pathophysiological hallmarks of Parkinson's disease is the selective degeneration and death of dopaminergic neurons (dopamine-producing nerve cells) in a part of the brain called the substantia nigra pars compacta ("SNpc").

44.     Dopamine is a neurotransmitter (a chemical messenger that transmits signals from one neuron to another neuron, muscle cell, or gland cell) that is critical to the brain's control of motor function (among other things).

45.     The death of dopaminergic neurons in the SNpc decreases the production of dopamine. Once dopaminergic neurons die, they are not replaced; when enough dopaminergic neurons have died, dopamine production falls below the level the brain requires for proper control of motor function, resulting in the motor symptoms of Parkinson's disease.

46.     The presence of Lewy bodies (insoluble aggregates of a protein called alpha-synuclein) in many of the remaining dopaminergic neurons in the SNpc is another of the primary pathophysiological hallmarks of Parkinson's disease.

47.     Dopaminergic neurons are particularly susceptible to oxidative stress, a disturbance in the normal balance between oxidants present in cells and cells' antioxidant defenses.

48.     Scientists who study Parkinson's disease generally agree that oxidative stress is a major

Case ID: 220101644

factor in-if not the precipitating cause of-the degeneration and death of dopaminergic neurons in the SNpc and the accumulation of Lewy bodies in the remaining dopaminergic neurons that are the primary pathophysiological hallmarks of the disease.

49.     Paraquat is highly toxic to both plants and animals, creating oxidative stress that causes or contributes to cause the degeneration and death of plant or animal cells.

50.     Paraquat creates oxidative stress in the cells of plants and animals because of "redox properties" that are inherent in its chemical composition and structure: it is a strong oxidant, and it readily undergoes "redox cycling" in the presence of molecular oxygen, which is plentiful in living cells.

51.     The redox cycling of Paraquat in living cells interferes with cellular functions that are necessary to sustain life-with photosynthesis in plant cells, and with cellular respiration in animal cells. The redox cycling of Paraquat in living cells creates a "reactive oxygen species" known as superoxide radical, an extremely reactive molecule that can initiate a cascading series of chemical reactions that creates other reactive oxygen species that damage lipids, proteins, and nucleic acids, molecules that are essential components of the structures and functions of living cells. Because the redox cycling of Paraquat can repeat indefinitely in the conditions typically present in living cells, a single molecule of Paraquat can trigger the production of countless molecules of destructive superoxide radical.

52.     Paraquat's redox properties have been known to science since at least the 1930s.

53.     It has been scientifically known since the 1960s that Paraquat (due to its redox properties) is toxic to the cells of plants and animals. The same redox properties that make Paraquat toxic to plant cells and other types of animal cells make it toxic to dopaminergic neurons in humans—that is, Paraquat is a strong oxidant that interferes with the function of, damages, and ultimately kills dopaminergic neurons in the human brain by creating oxidative stress through redox cycling.

Case ID: 220101644

54.     Paraquat is one of only a handful of toxins that scientists use to produce animal models of Parkinson's disease, i.e., use in a laboratory to artificially produce the symptoms of Parkinson's disease in animals.

55.     Animal studies involving various routes of exposure have found that Paraquat creates oxidative stress that results in the degeneration and death of dopaminergic neurons in the SNpc, other pathophysiology consistent with that seen in human Parkinson's disease, and motor deficits and behavioral changes consistent with those commonly seen in human Parkinson's disease.

56.     Hundreds of in vitro studies (experiments in a test tube, culture dish, or other controlled experimental environment) have found that Paraquat creates oxidative stress that results in the degeneration and death of dopaminergic neurons (and many other types of animal cells).

57.     Epidemiological studies have found that exposure to Paraquat significantly increases the risk of contracting Parkinson's disease. A number of studies have found that the risk of Parkinson's disease is more than double in populations with occupational exposure to Paraquat compared to populations without such exposure.

58.     These convergent lines of evidence (toxicology, animal experiments, and epidemiology) demonstrate that Paraquat exposure generally can cause Parkinson's disease.

## PARAQUAT REGULATION

59.     The Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 et seq., which regulates the distribution, sale, and use of pesticides within the U.S., requires that pesticides be registered with the U.S. Environmental Protection Agency ("EPA") prior to their distribution, sale, or use, except as described by FIFRA. 7 U.S.C. 136a(a).

60.     The Pennsylvania Pesticide Control Act of 1973, which regulates the labeling, distribution, use, and application of pesticides within the State of Pennsylvania, requires that pesticides be registered with the Pennsylvania Department of Agriculture before they are sold in Pennsylvania.

14

Case ID: 220101644

61.     Paraquat is a "restricted use pesticide" under federal law, see 40 C.F.R. § 152.175, which means it is "limited to use by or under the direct supervision of a certified applicator."

62.     As part of the pesticide registration process, the EPA requires, among other things, a variety of tests to evaluate the potential for exposure to pesticides, toxicity to people and other potential non-target organisms, and other adverse effects on the environment.

63.     As a general rule, FIFRA requires registrants, the chemical companies registered to sell the pesticides, to perform health and safety testing of pesticides. However, FIFRA does not require the EPA itself to perform health and safety testing of pesticides, and the EPA generally does not perform such testing.

64.     The EPA registers (or re-registers) a pesticide if it is persuaded, based largely on studies and data submitted by the registrant, that: (1) its composition is such as to warrant the proposed claims for it, 7 U.S.C. § 136a(c)(5)(A); (2) its labeling and other material required to be submitted comply with the requirements of FIFRA, 7 U.S.C. § 136a(c)(5)(B); (3) it will perform its intended function without unreasonable adverse effects on the environment, 7 U.S.C. § 136a(c)(5)(C); and (4) when used in accordance with widespread and commonly recognized practice it will not generally cause unreasonable adverse effects on the environment, 7 U.S.C. § 136a(c)(5)(D).

65.     FIFRA defines "unreasonable adverse effects on the environment" as "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide." 7 U.S.C. § 136(bb).

66.     Under FIFRA, "[a]s long as no cancellation proceedings are in effect registration of a pesticide shall be prima facie evidence that the pesticide, its labeling and packaging comply with the registration provisions of [FIFRA]." 7 U.S.C. § 136a(f)(2). However, FIFRA further provides that "[i]n no event shall registration of an article be construed as a defense for the commission of any offense under [FIFRA]." 7 U.S.C. § 136a(f)(2).

Case ID: 220101644

67.     The distribution or sale of a pesticide that is misbranded is an offense under FIFRA, which provides in relevant part that "it shall be unlawful for any person in any State to distribute or sell to any person ... any pesticide which is ... misbranded." 7 U.S.C. § 136j(a)(1)(E). A pesticide is misbranded under FIFRA if, among other things: (1) its labeling bears any statement, design, or graphic representation relative thereto or to its ingredients which is false or misleading in any particular, 7 U.S.C. § 136(q)(1)(A); (2) the labeling accompanying it does not contain directions for use which are necessary for effecting the purpose for which the product is intended and if complied with, together with any requirements imposed under section 136a(d) of this title, are adequate to protect health and the environment, 7 U.S.C. § 136(q)(1)(F); or (3) the label does not contain a warning or caution statement which may be necessary and if complied with, together with any requirements imposed under section 136a(d) of this title, is adequate to protect health and the environment," 7 U.S.C. § 136(q)(1)(G).

68.     As a result, a pesticide may be misbranded despite an EPA determination that it met FIFRA's registration criteria. In other words, notwithstanding its registration, a pesticide is misbranded if its label contains "false or misleading" statements, has inadequate instructions for use, or omits warnings or cautionary statements necessary to protect human health. Similarly, a pesticide may be found to cause unreasonable adverse effects on humans when used according to the approved label despite a determination by the EPA that it would not.

69.     Plaintiff does not seek in this action to impose on Defendants any labeling or packaging requirement in addition to or different from those required under FIFRA. Any allegation in this Complaint that a Defendant breached a duty to provide adequate directions for the use of or warnings about Paraquat, breached a duty to provide adequate packaging for Paraquat, concealed, suppressed, or omitted to disclose any material fact about Paraquat, or engaged in any unfair or deceptive practice regarding Paraquat, is intended and should be construed to be consistent with

16

Case ID: 220101644

that alleged breach, concealment, suppression, or omission, or unfair or deceptive practice having rendered the Paraquat "misbranded" under FIFRA. However, Plaintiff brings claims and seeks relief in this action only under state law and does not bring any claims or seek any relief in this action under FIFRA.

## ACTS OF SYNGENTA DEFENDANTS

70.	SCPLLC is a limited liability company organized under the laws of the State of Delaware. It is a successor by merger or continuation of business to its corporate predecessors, including but not limited to ICI Americas. SCPLLC is registered in Pennsylvania to do business in the State of Pennsylvania.

71.	SCPLLC or its corporate predecessors have sufficient minimum contacts with the State of Pennsylvania and have purposefully availed themselves of the privileges of conducting business in the State of Pennsylvania, in that they:

> a.	secured and maintained the registration of Paraquat products and other pesticides with the CDPR to enable themselves and others to manufacture, distribute, sell, and use these products in the State of Pennsylvania;

> b.	marketed, licensed, advertised, distributed, sold, and delivered Paraquat and other pesticides to chemical companies, licensees, distributors, and dealers whom they expected to distribute and sell Paraquat and other pesticides in or for use in the State of Pennsylvania, including the Chevron Defendants, FMC Defendant, and "Syngenta Retailers," as well as to applicators and farmers in the State of Pennsylvania; and

> c.	employed or utilized sales representatives to market and sell Paraquat and other pesticides in Pennsylvania.

72.	SCPLLC's contacts with the State of Pennsylvania are related to or gave rise to this controversy.

Case ID: 220101644

73.     On information and belief, SCPLLC and/or its predecessors have been aware that Paraquat causes Parkinson's disease, Parkinson's disease symptoms, and related neuropathologies since at least the 1970s. Internal research studies and analyses indicated that low-dose Paraquat exposure could cause or significantly increase the risk of Parkinson's disease. Yet SCPLLC and its predecessors took no action to protect end-users of its Paraquat products, including Plaintiffs.

74.     On information and belief, SCPLLC and/or its predecessors maintained open and ongoing communications with Chevron U.S.A. concerning the potential health consequences of low-dose Paraquat exposure.

### ACTS OF CHEVRON DEFENDANT

75.     Chevron U.S.A., Inc. is a corporation organized under the laws of the State of Pennsylvania, with its headquarters and principal place of business in San Ramon, California.

76.     Jurisdiction and venue are proper over Chevron U.S.A. Inc. because it:

> d.      secured and maintained the registration of Paraquat products and other pesticides with the CDPR to enable themselves and others to manufacture, distribute, sell, and use these products in the State of Pennsylvania;
>
> e.      marketed, licensed, advertised, distributed, sold, and delivered Paraquat and other pesticides to chemical companies, licensees, distributors, and dealers whom they expected to distribute and sell Paraquat and other pesticides in or for use in the State of Pennsylvania, including the Chevron Defendants, FMC Corporation, and "Syngenta Retailers," as well as to applicators and farmers in the State of Pennsylvania;
>
> f.      is incorporated in the State of Pennsylvania; and
>
> g.      conducted substantial business in the State of Pennsylvania and County of Philadelphia.

77.     On information and belief, Chevron U.S.A. and/or its predecessors have been aware that

Case ID: 220101644

Paraquat causes Parkinson's Disease, Parkinson's Disease symptoms, and related neuropathologies since at least the 1970s. Internal research studies and analyses indicated that low-dose Paraquat exposure could cause or significantly increase the risk of Parkinson's Disease. Yet Chevron U.S.A. and its predecessors took no action to protect end-uses of its Paraquat products, including Plaintiffs.

78.     On information and belief, Chevron U.S.A. and/or its predecessors maintained open and ongoing communications with SCPLLC and/or its predecessors concerning the potential health consequences of low-dose Paraquat exposure.

## ACTS OF FMC CORPORATION

79.     Defendant FMC Corporation is a Delaware corporation with its headquarters and principal place of business in Philadelphia, Pennsylvania.  FMC Corporation acquired and merged with Cheminova A/S, a member of the JGTF, and is the successor corporation to Cheminvoa A/S.

80.     Defendant FMC Corporation marketed, sold, and distributed Paraquat products and or/surfactants and other pesticides for use in combination with Paraquat in Pennsylvania.

## DEFENDANTS' TORTIOUS CONDUCT RESULTED IN PLAINTIFFS' INJURIES

81.     Plaintiffs hereby refer to, incorporate, and re-allege by this reference as though set forth in full, each and every allegation hereinabove and makes them a part of the following allegations.

### *Barbara Allen-Haring*

82.     Plaintiff Barbara Allen-Haring was exposed to Paraquat manufactured and/or distributed by SCPLLC or its predecessors.

83.     Ms. Allen-Haring was exposed to Paraquat manufactured and/or distributed by Chevron U.S.A. or its predecessors.

84.     On information and belief, Ms. Allen-Haring was exposed to Paraquat manufactured and/or distributed by FMC Corporation or its predecessors.

19

Case ID: 220101644

85.     The Paraquat to which Ms. Allen-Haring was exposed entered her body through absorption or penetration of the skin, mucous membranes, and other epithelial tissues (including tissues of the mouth, nose and nasal passages, trachea, and conducting airways, particularly where cuts, abrasions, rashes, sores, or other tissue damage are present); 2) through the olfactory bulb; 3) through respiration into the lungs; and 4) through ingestion into the digestive tract of small droplets swallowed after entering the mouth, nose, or conducting airways. Once absorbed, the Paraquat entered her bloodstream, attacked her nervous system, and was substantial factor in causing her to suffer Parkinson's disease.

86.     Ms. Allen-Haring was diagnosed with Parkinson's disease in 1998.

87.     Ms. Allen-Haring no reason to suspect the diagnosis was connected to her past Paraquat exposure.

88.     Ms. Allen-Haring was never told, either by a medical professional, by media, or by the Defendants, that exposure to Paraquat could cause her to suffer Parkinson's disease.

89.     Ms. Allen-Haring heard of the linkage between Paraquat and Parkinson's disease within a year of filing this action.

90.     Ms. Allen-Haring had no reason to suspect that his working with Paraquat could cause her to suffer Parkinson's disease or long-term neurological damage.

91.      SCPLLC and its predecessors' acts and omissions were a legal, proximate, and substantial factor in causing Ms. Allen-Haring to suffer severe and permanent physical injuries, pain, mental anguish, and disability, and will continue to do so for the remainder of her life.

92.     Chevron U.S.A. and its predecessors' acts and omissions were a legal, proximate, and substantial factor in causing Ms. Allen-Haring to suffer severe and permanent physical injuries, pain, mental anguish, and disability, and will continue to do so for the remainder of her life.

93.     SMC Corporation's acts and omissions were a legal, proximate, and substantial factor in

Case ID: 220101644

causing Ms. Allen-Haring to suffer severe and permanent physical injuries, pain, mental anguish, and disability, and will continue to do so for the remainder of her life.

94.      By reason of the premises, it became necessary for Ms. Allen-Haring to incur expenses from medical care and treatment, and related costs and expenses required in the care and treatment of said injuries. Ms. Allen-Haring's damages in this respect are presently unascertained as said services are still continuing.

95.      By reason of the premises, it will be necessary for Ms. Allen-Haring to incur future expenses for medical care and treatment, and related costs and expenses required for future care and treatment. Ms. Allen-Haring's damages in this respect are presently unascertained as said services are still continuing. Ms. Allen-Haring prays leave to insert elements of damages in this respect when the same are finally determined.

96.      By reason of the premises, Ms. Allen-Haring has been at times unable to follow Ms. Allen-Haring regular employment, incurring special damages in a presently unascertained sum as said loss is still continuing. Ms. Allen-Haring prays leave to insert elements of damages with regards to past wage loss, future wage loss, and lost earning capacity when the same are finally determined.

97.      By reason of the premises, Ms. Allen-Haring has suffered general (non-economic) damages in a sum in excess of the jurisdictional minimum of this court.

98.      By reason of the premises, Ms. Allen-Haring has suffered special (economic) damages in a sum in excess of the jurisdictional minimum of this court.

### *David Steele*

99.      Plaintiff David Steele was exposed to Paraquat manufactured and/or distributed by SCPLLC or its predecessors.

100.      Mr. Steele was exposed to Paraquat manufactured and/or distributed by Chevron U.S.A. or its predecessors.

Case ID: 220101644

101.    The Paraquat to which Mr. Steele was exposed entered his body through absorption or penetration of the skin, mucous membranes, and other epithelial tissues (including tissues of the mouth, nose and nasal passages, trachea, and conducting airways, particularly where cuts, abrasions, rashes, sores, or other tissue damage are present); 2) through the olfactory bulb; 3) through respiration into the lungs; and 4) through ingestion into the digestive tract of small droplets swallowed after entering the mouth, nose, or conducting airways. Once absorbed, the Paraquat entered his bloodstream, attacked his nervous system, and was substantial factor in causing him to suffer Parkinson's disease.

102.    Mr. Steele was diagnosed with Parkinson's disease in 2020.

103.    Mr. Steele had no reason to suspect the diagnosis was connected to his past Paraquat exposure.

104.    Mr. Steele was never told, either by a medical professional, by media, or by the Defendants, that exposure to Paraquat could cause him to suffer Parkinson's disease.

105.    Mr. Steele heard of the linkage between Paraquat and Parkinson's disease within a year of filing this action.

106.    Mr. Steele had no reason to suspect that his working with Paraquat could cause him to suffer Parkinson's disease or long-term neurological damage.

107.    SCPLLC and its predecessors' acts and omissions were a legal, proximate, and substantial factor in causing Mr. Steele to suffer severe and permanent physical injuries, pain, mental anguish, and disability, and will continue to do so for the remainder of his life.

108.    Chevron U.S.A. and its predecessors' acts and omissions were a legal, proximate, and substantial factor in causing Mr. Steele to suffer severe and permanent physical injuries, pain, mental anguish, and disability, and will continue to do so for the remainder of his life.

109.    By reason of the premises, it became necessary for Mr. Steele to incur expenses from

Case ID: 220101644

medical care and treatment, and related costs and expenses required in the care and treatment of said injuries. Mr. Steele's damages in this respect are presently unascertained as said services are still continuing.

110.     By reason of the premises, it will be necessary for Mr. Steele to incur future expenses for medical care and treatment, and related costs and expenses required for future care and treatment. Mr. Steeles' damages in this respect are presently unascertained as said services are still continuing. Mr. Steele prays leave to insert elements of damages in this respect when the same are finally determined.

111.     By reason of the premises, Mr. Steele has been at times unable to follow his regular employment, incurring special damages in a presently unascertained sum as said loss is still continuing. Mr. Steele ger prays leave to insert elements of damages with regards to past wage loss, future wage loss, and lost earning capacity when the same are finally determined.

112.     By reason of the premises, Mr. Steele has suffered general (non-economic) damages in a sum in excess of the jurisdictional minimum of this court.

113.     By reason of the premises, Mr. Steele has suffered special (economic) damages in a sum in excess of the jurisdictional minimum of this court.

*Joseph Wochner*

114.     Plaintiff Joseph Wochner was exposed to Paraquat manufactured and/or distributed by SCPLLC or its predecessors.

115.     Mr. Wochner was exposed to Paraquat manufactured and/or distributed by Chevron U.S.A. or its predecessors.

116.     The Paraquat to which Mr. Wochner was exposed entered his body through absorption or penetration of the skin, mucous membranes, and other epithelial tissues (including tissues of the mouth, nose and nasal passages, trachea, and conducting airways, particularly where cuts,

Case ID: 220101644

abrasions, rashes, sores, or other tissue damage are present); 2) through the olfactory bulb; 3) through respiration into the lungs; and 4) through ingestion into the digestive tract of small droplets swallowed after entering the mouth, nose, or conducting airways. Once absorbed, the Paraquat entered his bloodstream, attacked his nervous system, and was substantial factor in causing him to suffer Parkinson's disease.

117.    Mr. Wochner was diagnosed with Parkinson's disease in 2014.

118.    Mr. Wochner had no reason to suspect the diagnosis was connected to his past Paraquat exposure.

119.    Mr. Wochner was never told, either by a medical professional, by media, or by the Defendants, that exposure to Paraquat could cause him to suffer Parkinson's disease.

120.    Mr. Wochner heard of the linkage between Paraquat and Parkinson's disease within a year of filing this action.

121.    Mr. Wochner had no reason to suspect that his working with Paraquat could cause him to suffer Parkinson's disease or long-term neurological damage.

122.    SCPLLC and its predecessors' acts and omissions were a legal, proximate, and substantial factor in causing Mr. Wochner to suffer severe and permanent physical injuries, pain, mental anguish, and disability, and will continue to do so for the remainder of his life.

123.    Chevron U.S.A. and its predecessors' acts and omissions were a legal, proximate, and substantial factor in causing Mr. Wochner to suffer severe and permanent physical injuries, pain, mental anguish, and disability, and will continue to do so for the remainder of his life.

124.    By reason of the premises, it became necessary for Mr. Wochner to incur expenses from medical care and treatment, and related costs and expenses required in the care and treatment of said injuries. Mr. Wochner's damages in this respect are presently unascertained as said services are still continuing.

24

Case ID: 220101644

125.     By reason of the premises, it will be necessary for Mr. Wochner to incur future expenses for medical care and treatment, and related costs and expenses required for future care and treatment. Mr. Wochner's damages in this respect are presently unascertained as said services are still continuing. Mr. Wochner prays leave to insert elements of damages in this respect when the same are finally determined.

126.     By reason of the premises, Mr. Wochner has been at times unable to follow Mr. Wochner's regular employment, incurring special damages in a presently unascertained sum as said loss is still continuing. Mr. Wochner prays leave to insert elements of damages with regards to past wage loss, future wage loss, and lost earning capacity when the same are finally determined.

127.     By reason of the premises, Mr. Wochner has suffered general (non-economic) damages in a sum in excess of the jurisdictional minimum of this court.

128.     By reason of the premises, Mr. Wochner has suffered special (economic) damages in a sum in excess of the jurisdictional minimum of this court.

### *Barbara Burns*

129.     Plaintiff Barbara Burns was exposed to Paraquat manufactured and/or distributed by SCPLLC or its predecessors.

130.     Ms. Burns was exposed to Paraquat manufactured and/or distributed by Chevron U.S.A. or its predecessors.

131.     The Paraquat to which Ms. Burns was exposed entered her body through absorption or penetration of the skin, mucous membranes, and other epithelial tissues (including tissues of the mouth, nose and nasal passages, trachea, and conducting airways, particularly where cuts, abrasions, rashes, sores, or other tissue damage are present); 2) through the olfactory bulb; 3) through respiration into the lungs; and 4) through ingestion into the digestive tract of small droplets swallowed after entering the mouth, nose, or conducting airways. Once absorbed, the Paraquat

Case ID: 220101644

entered her bloodstream, attacked her nervous system, and was substantial factor in causing her to suffer Parkinson's disease.

132.    Ms. Burns was diagnosed with Parkinson's disease in 2019.

133.    Ms. Burns had no reason to suspect the diagnosis was connected to her past Paraquat exposure.

134.    Ms. Burns was never told, either by a medical professional, by media, or by the Defendants, that exposure to Paraquat could cause her to suffer Parkinson's disease.

135.    Ms. Burns heard of the linkage between Paraquat and Parkinson's Disease within a year of filing this action.

136.    Ms. Burns had no reason to suspect that her working with Paraquat could cause her to suffer Parkinson's disease or long-term neurological damage.

137.    SCPLLC and its predecessors' acts and omissions were a legal, proximate, and substantial factor in causing Ms. Burns to suffer severe and permanent physical injuries, pain, mental anguish, and disability, and will continue to do so for the remainder of her life.

138.    Chevron U.S.A. and its predecessors' acts and omissions were a legal, proximate, and substantial factor in causing Ms. Burns to suffer severe and permanent physical injuries, pain, mental anguish, and disability, and will continue to do so for the remainder of her life.

139.    By reason of the premises, it became necessary for Ms. Burns to incur expenses from medical care and treatment, and related costs and expenses required in the care and treatment of said injuries. Ms. Burns's damages in this respect are presently unascertained as said services are still continuing.

140.    By reason of the premises, it will be necessary for Ms. Burns to incur future expenses for medical care and treatment, and related costs and expenses required for future care and treatment. Ms. Burns's damages in this respect are presently unascertained as said services are still

Case ID: 220101644

continuing. Ms. Burns prays leave to insert elements of damages in this respect when the same are finally determined.

141.    By reason of the premises, Ms. Burns has been at times unable to follow her regular employment, incurring special damages in a presently unascertained sum as said loss is still continuing. Ms. Burns prays leave to insert elements of damages with regards to past wage loss, future wage loss, and lost earning capacity when the same are finally determined.

142.    By reason of the premises, Ms. Burns has suffered general (non-economic) damages in a sum in excess of the jurisdictional minimum of this court.

143.    By reason of the premises, Ms. Burns has suffered special (economic) damages in a sum in excess of the jurisdictional minimum of this court.

### *Lauriano Barajas*

144.    Plaintiff Lauriano Barajas was exposed to Paraquat manufactured and/or distributed by SCPLLC or its predecessors.

145.    Mr. Barajas was exposed to Paraquat manufactured and/or distributed by Chevron U.S.A. or its predecessors.

146.    The Paraquat to which Mr. Barajas was exposed entered his body through absorption or penetration of the skin, mucous membranes, and other epithelial tissues (including tissues of the mouth, nose and nasal passages, trachea, and conducting airways, particularly where cuts, abrasions, rashes, sores, or other tissue damage are present); 2) through the olfactory bulb; 3) through respiration into the lungs; and 4) through ingestion into the digestive tract of small droplets swallowed after entering the mouth, nose, or conducting airways. Once absorbed, the Paraquat entered his bloodstream, attacked his nervous system, and was substantial factor in causing him to suffer Parkinson's disease.

147.    Mr. Barajas was diagnosed with a precursor to Parkinson's disease in 2018.

Case ID: 220101644

148.    Mr. Barajas had no reason to suspect the diagnosis was connected to his past Paraquat exposure.

149.    Mr. Barajas was never told, either by a medical professional, by media, or by the Defendants, that exposure to Paraquat could cause him to suffer Parkinson's disease.

150.    Mr. Barajas heard of the linkage between Paraquat and Parkinson's Disease within a year of filing this action.

151.    Mr. Barajas had no reason to suspect that his working with Paraquat could cause him to suffer Parkinson's disease or long-term neurological damage.

152.    SCPLLC and its predecessors' acts and omissions were a legal, proximate, and substantial factor in causing Mr. Barajas to suffer severe and permanent physical injuries, pain, mental anguish, and disability, and will continue to do so for the remainder of his life.

153.    Chevron U.S.A. and its predecessors' acts and omissions were a legal, proximate, and substantial factor in causing Mr. Barajas to suffer severe and permanent physical injuries, pain, mental anguish, and disability, and will continue to do so for the remainder of his life.

154.    By reason of the premises, it became necessary for Mr. Barajas to incur expenses from medical care and treatment, and related costs and expenses required in the care and treatment of said injuries. Mr. Barajas's damages in this respect are presently unascertained as said services are still continuing.

155.    By reason of the premises, it will be necessary for Mr. Barajas to incur future expenses for medical care and treatment, and related costs and expenses required for future care and treatment. Mr. Barajas's damages in this respect are presently unascertained as said services are still continuing. Mr. Barajas prays leave to insert elements of damages in this respect when the same are finally determined.

156.    By reason of the premises, Mr. Barajas has been at times unable to his regular employment,

28

Case ID: 220101644

incurring special damages in a presently unascertained sum as said loss is still continuing. Mr. Barajas prays leave to insert elements of damages with regards to past wage loss, future wage loss, and lost earning capacity when the same are finally determined.

157.      By reason of the premises, Mr. Barajas has suffered general (non-economic) damages in a sum in excess of the jurisdictional minimum of this court.

158.      By reason of the premises, Mr. Barajas has suffered special (economic) damages in a sum in excess of the jurisdictional minimum of this court.

## CAUSES OF ACTION

### COUNT I - STRICT PRODUCTS LIABILITY DESIGN DEFECT

159.      Plaintiffs incorporate by reference each allegation set forth in preceding paragraphs as if fully stated herein.

160.      Defendants are liable to Plaintiffs under a products liability theory for marketing a defectively-designed product, as well as for failing to adequately warn of the risk of severe neurological injury caused by chronic, low-dose exposure to Paraquat.

161.      At all relevant times, Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors designed, manufactured, distributed, and sold Paraquat for use in the State of Pennsylvania.

162.      At all relevant times and places, the Paraquat that Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors, designed, manufactured, distributed, and sold was used in the intended or a reasonably foreseeable manner.

163.      Plaintiffs were exposed to Paraquat that Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors designed, manufactured, distributed, and sold. As a result of that exposure, Paraquat entered Plaintiffs' body causing Plaintiffs to develop Parkinson's disease or its predecessor.

29

Case ID: 220101644

164.     The Paraquat that Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors designed, manufactured, distributed, and sold did not perform as safely as an ordinary consumer would have expected it to perform when used in the intended or a reasonably foreseeable manner, in that:

   a.     as designed, manufactured, formulated and packaged Paraquat was likely to be inhaled, ingested, and absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed (or areas near where it had been sprayed); and

   b.     when inhaled, ingested, or absorbed into the body, it was likely to cause neurological damage that was both permanent and cumulative, and repeated low-dose exposures were likely to cause neurodegenerative disease, including Parkinson's disease.

165.     Alternatively, Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors' Paraquat products were defectively designed in that the risk of danger inherent in the challenged design outweighed the benefits of such design, considering, among other relevant factors, the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from an alternative design.

166.     The design defect existed when the Paraquat left Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors, and their corporate predecessors' possession and control.

   WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all relief as this Court deems just and proper. Additionally, Plaintiffs demand

30

a jury trial on all issues contained herein.

## COUNT II - STRICT PRODUCTS LIABILITY FAILURE TO WARN

167.    Defendants are also liable to Plaintiffs under a products liability theory based on their failure to adequately warn of the risks of Paraquat.  Plaintiffs incorporate by reference each allegation set forth in preceding paragraphs as if fully stated herein.

168.    When Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors manufactured and sold the Paraquat to which Plaintiffs were exposed, it was known or knowable to Defendants in light of scientific knowledge that was generally accepted in the scientific community that:

    a.    Paraquat was designed, manufactured, formulated, and packaged such that it was likely to be inhaled, ingested, and absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed; and

    b.    when inhaled, ingested, or absorbed into the body, it was likely cause latent neurological damage that was both permanent and cumulative, and that repeated, low-dose exposures were likely to cause neurodegenerative disease, including Parkinson's disease.

169.    The risk of contracting Parkinson's disease from chronic, low-dose exposure to Paraquat presented a substantial danger to users of Paraquat when the product was used in a reasonably foreseeable manner.

170.    An ordinary consumer would not have recognized the potential risk of permanent, irreversible neurological damage, including the risk of contracting Parkinson's disease, from chronic, low-dose exposure to Paraquat.

171.    Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate

31

predecessors failed to warn of the potential risk of permanent, irreversible neurological damage from chronic, low-dose exposure to Paraquat, and failed to provide adequate instructions regarding avoidance of these risks.

172.    As a direct and proximate result of Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors' marketing a defective product, Plaintiffs suffered the injuries described in this Complaint.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all relief as this Court deems just and proper. Additionally, Plaintiffs demand a jury trial on all issues contained herein.

## COUNT III - NEGLIGENCE

173.    Plaintiffs incorporate by reference each allegation set forth in preceding paragraphs as if fully stated herein.

174.    At all relevant times, Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors designed, manufactured, distributed, and sold Paraquat for use in the State of Pennsylvania.

175.    Plaintiffs were exposed to Paraquat that Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors marketed, manufactured, distributed, and/or sold.

176.    The Paraquat to which Plaintiffs were exposed was used in the intended or a reasonably foreseeable manner.

177.    At all times relevant to this claim, in researching, designing, manufacturing, packaging, labeling, distributing, and selling Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors owed a duty to exercise ordinary care for the health

Case ID: 220101644

and safety of the persons whom it was reasonably foreseeable could be exposed to Paraquat, including Plaintiffs.

178.   When Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors designed, manufactured, packaged, labeled, distributed, and sold the Paraquat to which Plaintiffs were exposed, it was reasonably foreseeable that Paraquat:

   a.   was likely to be inhaled, ingested, and absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed; and

   b.   when inhaled, ingested, or absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it has been sprayed or areas near where it has been sprayed, it was likely to cause neurological damage that was both permanent and cumulative, and repeated exposures were likely to cause neurodegenerative disease, including Parkinson's disease.

179.   In breach of the aforementioned duty to Plaintiffs, Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors negligently:

   a. failed to design, manufacture, formulate, and package Paraquat to make it unlikely to be inhaled, ingested, and absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed;

   b.   designed, manufactured, and formulated Paraquat such that it was likely to cause neurological damage that was both permanent and cumulative, and repeated exposures were likely to cause clinically significant neurodegenerative disease, including Parkinson's disease;

   c. failed to conduct adequate research and testing to determine the extent to which

Case ID: 220101644

exposure to Paraquat was likely to occur through inhalation, ingestion, and absorption into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed;

 d.       failed to conduct adequate research and testing to determine the extent to which Paraquat spray drift was likely to occur, including its propensity to drift, the distance it was likely to drift, and the extent to which Paraquat spray droplets were likely to enter the bodies of persons spraying it or other persons nearby during or after spraying;

 e. failed to conduct adequate research and testing to determine the extent to which Paraquat was likely to cause or contribute to cause latent neurological damage that was both permanent and cumulative, and the extent to which repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including Parkinson's disease;

 f. failed to direct that Paraquat be used in a manner that would have made it unlikely to be inhaled, ingested, and absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed; and

 g.       failed to warn that Paraquat was likely to cause neurological damage that was both permanent and cumulative, and repeated exposures were likely to cause clinically significant neurodegenerative disease, including Parkinson's disease.

180.    Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors knew or should have known that users would not realize the dangers of exposure to Paraquat and negligently failed to take reasonable steps to prevent the foreseeable risk of harm

Case ID: 220101644

from exposure to Paraquat.

181.     As a direct and proximate result of Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors' negligence, Plaintiffs suffered the injuries described in this Complaint.

182.     Additionally, in the course of designing, manufacturing, packaging, labeling, distributing, and selling Paraquat, Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors violated laws, statutes, and regulations, including but not limited to: sections of Food & Agriculture Code, Division 7, Chapter 2 (Pesticides) and sections of Title 3, California Code of Regulations, Division 6 (Pesticides).

183.     Plaintiffs were members of the class of persons that said laws, statutes, and regulations were intended to protect.

184.     Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors' violations of said laws, statutes, and regulations were also substantial factors in causing Plaintiffs' injuries.

185.     The injuries that resulted from Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors' violations were the kind of occurrence the laws, statutes, and regulations were designed to protect.

        WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all relief as this Court deems just and proper. Additionally, Plaintiffs demand a jury trial on all issues contained herein.

### COUNT IV - BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

186.     Plaintiffs incorporate by reference each allegation set forth in preceding paragraphs as if fully stated herein.

Case ID: 220101644

187.     At all relevant times, Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors engaged in the business of designing, manufacturing, distributing, and selling Paraquat and other restricted-use pesticides and held themselves out as having special knowledge or skill regarding Paraquat and other restricted-use pesticides.

188.     At all relevant times, Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors designed, manufactured, distributed, and sold Paraquat for use in the State of Pennsylvania and nationally.

189.     Plaintiffs were exposed to Paraquat that Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors, marketed, designed, manufactured, distributed, and/or sold.

190.     The Paraquat to which Plaintiffs were exposed was not fit for the ordinary purposes for which it was used, and in particular:

     a.     it was designed, manufactured, formulated, and packaged such that it was likely to be inhaled, ingested, and absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed; and

     b.     when inhaled, ingested, or absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed, it was likely to cause neurological damage that was both permanent and cumulative, and repeated exposures were likely to cause neurodegenerative disease, including Parkinson's disease.

191.     As a direct and proximate result of Chevron U.S.A. Inc., the Syngenta Defendant, FMC Corporation, and their corporate predecessors' breach of implied warranty, Plaintiffs suffered the injuries herein described.

36

Case ID: 220101644

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all relief as this Court deems just and proper. Additionally, Plaintiffs demand a jury trial on all issues contained herein.

## COUNT V- PUNITIVE DAMAGES

192. Plaintiffs incorporate by reference each allegation set forth in preceding paragraphs as if fully stated herein.

193. Defendants' conduct as alleged herein was done with oppression, fraud, and malice. Defendants were fully aware of the safety risks of Paraquat. Nonetheless, Defendants deliberately crafted their label, marketing, and promotion to mislead farmers and consumers.

194. This was not done by accident or through some justifiable negligence. Rather, Defendants knew that it could turn a profit by convincing the agricultural industry and medical community that Paraquat did not cause Parkinson's disease, and that full disclosure of the true risks of Paraquat would limit the amount of money Defendants would make selling Paraquat. Furthermore, Defendants were aware that low-dose Paraquat exposure could cause or significantly increase the risk of Parkinson's disease or its symptoms by the 1970s. Yet they did not inform users through updated labels or other means of the risks associated with Paraquat use. Defendants' objective of concealing the risks of Paraquat was accomplished not only through its misleading labeling, but through a comprehensive scheme of selective and fraudulent research and testing, misleading advertising, and deceptive omissions as more fully alleged throughout this pleading. Plaintiffs were denied the right to make an informed decision about whether to purchase, use, or be exposed to an herbicide, knowing the full risks attendant to that use. Such conduct was done with conscious disregard of Plaintiff's rights.

195. There is no indication that Defendants will stop their deceptive and unlawful marketing

Case ID: 220101644

practices unless they are punished and deterred. Accordingly, Plaintiffs request punitive damages against the Defendants for the harms caused to Plaintiff.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintifs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all relief as this Court deems just and proper. Additionally, Plaintiffs demand a jury trial on all issues contained herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against all Defendants as follows:

(1)     Judgment for Plaintiffs against Defendants;

(2)     For medical and related expenses, according to proof;

(3)     For loss of earnings and/or earning capacity, according to proof

(4)     For exemplary or punitive damages, according to proof;

(5)     For treble damages;

(6)     For mental and physical suffering, according to proof;

(7)     For Plaintiffs' cost of suit herein;

(8)     For disgorgement of profits, according to proof;

(9)     Default judgment as a sanction for the bad faith destruction of evidence, if any, and according to proof, if any; and

(10)    For such other and further relief as this Court may deem just and proper, including prejudgment interest.

Case ID: 220101644

## DEMAND FOR JURY TRIAL

Plaintiffs demands a jury trial on all claims so triable in this action.


Dated: January 20, 2022.

Respectfully submitted,

*/s/ Tayjes Shah*
Tayjes Shah (Identification No.: 307899)
**THE MILLER FIRM, LLC**
108 Railroad Avenue
Orange, Virginia 22960
Tel: (540) 672–4224
Fax: (540) 672–3055
E–Mail: tshah@millerfirmllc.com


Aimee H. Wagstaff (pro hac vice forthcoming)
**The Wagstaff Law Firm, PC**
940 N. Lincoln Street
Denver, CO 80203
Phone: (303) 376-6360
Fax: (303) 376-6361

*Attorneys for Plaintiff*

Case ID: 220101644

Case ID: 220101644

## VERIFICATIONS

*Filed and Attested by the*
*Office of Judicial Records*
*20 JAN 2022 01:31 pm*
*S. RICE*

I, Tayjes Shah, hereby state that I am an attorney for Plaintiff Barbara Allen-Haring in this action and verify that the statements made in the foregoing Complaint pertaining to Ms. Allen-Haring are true and correct and drawn from the best of her knowledge, information and belief. I understand that the statements therein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities. Ms. Allen-Haring was unavailable to verify this Complaint at the time of filing.

_/s/ Tayjes Shah_____
Tayjes Shah

Dated: January 20, 2022.


I, David Steele , hereby state that I am a Plaintiff in this action and I verify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief. I understand that the statements therein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

David Steele

Dated: January 19, 2022.


I, Joseph Wochner , hereby state that I am a Plaintiff in this action and I verify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief. I understand that the statements therein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Joseph Wochner

Dated: January 19, 2022.


I, Barbara Burns , hereby state that I am a Plaintiff in this action and I verify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief. I understand that the statements therein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Barbara Burns

Dated: January 19, 2022.

I, Lauriano Barajas , hereby state that I am a Plaintiff in this action and I verify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief. I understand that the statements therein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

_Lauriano Barajas_
Lauriano Barajas

Dated: January 19, 2022.